T.C. Memo. 1998-180


UNITED STATES TAX COURT


STEPHEN H. RIFKIN & PAMELA T. RIFKIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15233-96.                    Filed May 13, 1998.


<u>Warren Nemiroff</u>, for petitioners.

<u>Miles D. Friedman</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined Federal income tax

deficiencies in petitioners'[1] 1992 and 1993 taxable years as

follows:

_____

[1] Petitioner Stephen H. Rifkin died after the filing of the
petition in this case and prior to the trial.

|  |  | Penalties |
| Year | Deficiency | Sec. 6662(a) |
| 1992 | $23,257 | $4,651 |
| 1993 | 24,762 | 4,952 |

The parties have agreed to amounts for the 1992 taxable year, and the following issues remain in controversy for 1993: (1) Whether petitioners failed to report $324,851.31 of gross receipts for 1993; (2) whether petitioners' cost of goods sold was $32,453, as reported, or $290,084 as determined by respondent; (3) whether petitioners have substantiated entitlement to $5,640 of deductions claimed on their Schedule C for 1993; (4) whether petitioners are entitled to claim certain employee expenses or should use a standard deduction for 1993; and (5) whether petitioners are liable for an accuracy-related penalty for 1993.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioners Stephen (now deceased) and Pamela Rifkin were married during the years under consideration, and they resided in Laguna Beach, California, at the time their petition was filed. Mrs. Rifkin graduated from high school in 1972, continued on through 1 year of college, and, in 1978, married Mr. Rifkin. Mrs. Rifkin obtained an associate of arts degree in about 1989,

and in 1991 began an interior design business that she named "Metamorphosis Design Group" (Metamorphosis). During the 1992 and 1993 taxable years, Mrs. Rifkin owned and operated Metamorphosis from her residence, where she designed one-of-a-kind furniture, lighting, and other interior decorating items.

Mr. Rifkin was disabled and unemployed throughout 1993, but assisted Mrs. Rifkin by handling the paperwork and financial matters for Metamorphosis. No formal books or records were maintained for Metamorphosis, and Mr. Rifkin prepared petitioners' 1993 Federal income tax return, reporting certain amounts as Metamorphosis' business income on Schedule C. Mrs. Rifkin signed the 1993 return without reviewing the contents. On their 1993 Schedule C, petitioners reported gross receipts of $82,387, cost of goods sold of $32,453, and gross income of $49,934.

Rose Koczergo was assigned to audit petitioners' 1992 and 1993 income tax returns. At the time of the trial in this case, she had been an internal revenue agent for 4 years and a tax auditor for the first 5 of her 9 years with the Internal Revenue Service. Prior to working for respondent, she held various positions in financial banking institutions. Agent Koczergo received a degree in accounting, but is not licensed as a public or certified public accountant.

This case was one of the first assigned to Ms. Koczergo after she had become an internal revenue agent. Petitioners' records were requested, and the data provided was incomplete, so Agent Koczergo used the bank deposits method to analyze and reconstruct petitioners' income. The records received from petitioners included partial bank statements, clients' ledgers, and canceled checks (personal and business, except for the month of December 1993).

Petitioners also provided a document they denominated as a "ledger" that had been maintained by Mr. Rifkin. The document consisted of a single page reflecting the 1993 monthly "Gross" and "Profit", along with running totals for each month. The ledger did not contain any details as to the name of customers or any other references that could be reconciled with other business documents, records, or bank records. The total "Profit" reflected on the ledger for 1993 was $85,990.87, and the total "Gross" for 1993 was reflected as $248,089.41.

With respect to other documents provided by petitioners, Agent Koczergo did not find them to be complete and reliable due to changes (including erasures and "white-outs") and because the backup documents (such as invoices and client proposals) were not available to her. Because of these circumstances, Agent Koczergo utilized the bank deposits method to reconstruct petitioners' 1993 income.

During the audit process, Agent Koczergo calculated that $552,594.68 in deposits was made to petitioners' bank accounts, and from that amount she made the following adjustments/reductions: $122,776.85 for transfers between accounts; $82,387 for the gross receipts reported by petitioners; $27 for interest and $18 for dividends reported by petitioners; $12,535 for disability payments received by petitioners; and $875 for sales tax paid. After subtracting the total of those amounts from the $552,594.68 in deposits, Agent Koczergo calculated and proposed net bank deposits and unreported gross receipts of $333,975.83.

Following the audit and during the pretrial portion of this case, Agent Koczergo was informed of additional nontaxable transfers that would increase the total from $122,776.85 to $131,901.37 and correspondingly reduce the net bank deposits and proposed unreported income from $333,975.83 to $324,851.31. Respondent determined unreported gross receipts of $333,976 in the notice of deficiency and now concedes that the correct amount, in accord with Agent Koczergo's revised calculations, should be $324,851.

With respect to the cost of goods sold reported by petitioners, Agent Koczergo was unable to reconcile that amount to the records (vendor ledger sheets and canceled checks) provided by petitioners. Accordingly, she reconstructed

petitioners' cost of goods sold by adding the following amounts: $196,398 shown in petitioners' vendor ledger sheets; $67,321 shown on canceled checks that did not appear to be a duplication of those shown on the vendor ledger sheets; $373 based on oral representations received by Agent Koczergo; $22,939 shown on check stubs for December (no canceled checks were available for December) that did not appear to be a duplication of those shown on the vendor ledger sheets; and $3,053 shown on check stubs, for months other than December, that did not appear to be a duplication of those shown on the vendor ledger sheets. In this manner, Agent Koczergo computed a total cost of goods sold of $290,084 for 1993. Respondent's notice of deficiency contained the determination that the $32,453 petitioners reported as cost of goods sold should be increased by $257,631 to arrive at the $290,084 calculated by Agent Koczergo.

Petitioners reported on their 1993 income tax return a $65,329 opening and a $32,876 ending inventory and no purchases, costs of materials, labor, or supplies. After subtracting the reported ending from the opening inventory, petitioners reflected a $32,453 cost of goods sold. Agent Koczergo did not observe any inventory on hand during audit-related trips to petitioners' home/business location, and she did not use an inventory figure in arriving at cost of goods sold.

Prior to performing a bank deposits analysis, Agent Koczergo performed a "cash T analysis" consisting of amounts that she concluded represented petitioners' personal expenditures. That analysis is intended to measure a taxpayer's reported income against personal expenditures to determine whether more was spent than was reported. Agent Koczergo's analysis reflected that petitioners expended about $77,000 more than they reported for the 1993 year, and, based on that analysis and because of petitioners' inadequate records, Agent Koczergo proceeded to employ the bank deposits method to reconstruct petitioners' income for 1993.

Petitioners maintained four bank accounts during 1993. Petitioners designated three of the accounts as follows: "Pamela T. Rifkin DBA Metamorphosis Design Group Client Trust Account", "Pamela T. Rifkin DBA Metamorphosis Design Group General Account", and "Stephen H. Rifkin or Pamela Rifkin". The balance of the Pamela T. Rifkin DBA Metamorphosis Design Group Client Trust Account was about $9,000 at the beginning and $6,000 at the end of 1993, and petitioners deposited $390,804.74 into it during the 1993 year. The fourth account was not used in the bank deposit analysis performed by Agent Koczergo. Other than with respect to $12,535 of disability payments received, petitioners did not show or advise respondent that they had additional nontaxable transfers between accounts and/or received nontaxable

amounts that were or could have been deposited in the bank accounts used by Agent Koczergo to reconstruct income for 1993.

ULTIMATE FINDINGS OF FACT

Petitioners failed to report $324,851.31 of gross receipts on their 1993 income tax return.

Petitioners failed to claim $257,631 in cost of goods sold for their 1993 income tax year.

OPINION

The focus of the parties' briefs and trial presentations concerns respondent's determination of unreported income, increased cost of goods sold, and whether petitioners are liable for the accuracy-related penalty.  Concerning respondent's reconstruction of petitioners' 1993 income by means of the bank deposits method, petitioners argue that respondent's methodology is flawed and that petitioners' accountant's approach, developed after the audit, more accurately reflects petitioners' income.

Where, as here, taxpayers have failed to provide adequate records substantiating their income, an indirect method may be used to reconstruct income.  Holland v. United States, 348 U.S. 121 (1954).  Respondent used the bank deposits method to reconstruct petitioners' income.  Petitioners must now prove by a preponderance of the evidence that respondent's determination is erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933);

Webb v. Commissioner, 394 F.2d 366, 372 (5th Cir. 1968), affg.
T.C. Memo. 1966-81.

Taxpayers are required to maintain records, including the maintaining of documentation of transactions, expenses, etc. See sec. 6001. The bank deposits method has been approved as an indirect method with which to reconstruct income. United States v. Carter, 721 F.2d 1514, 1538 (11th Cir. 1984) (citing United States v. Boulet, 577 F.2d 1165 (5th Cir. 1978)).

In Clayton v. Commissioner, 102 T.C. 632, 645 (1994), we described the attributes and use of the bank deposits method as follows:

> Bank deposits are prima facie evidence of income, Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), and the taxpayer has the burden of showing that the determination is incorrect, Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In such case the Commissioner is not required to show a likely source of income, id., although here she has done so. The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge. DiLeo v. Commissioner, 96 T.C. at 868.

Here, petitioners do not contend that the deposits were not made or that respondent did not allow for nontaxable sources or for additional deductions. Instead, petitioners argue that their method more accurately reflects income. On brief, petitioners generally describe their argument as follows:

PETITIONERS HAVE PROVEN THEY HAVE TAXABLE INCOME FOR
THE YEAR 1993 PREDICATED ON A LOGICAL METHOD OF
COMPUTING SAME, AND SAID METHOD IS SUPERIOR TO AND MORE
TRUSTWORTHY THAN THE METHOD SO USED BY RESPONDENT[2]

\* \* \* \* \* \* \*

\* \* \* Taxpayers used a separate bank account which
they designated as a Trust account to hold clients['] 
money for purposes of providing future decorating
services, including purchase of furnishings and
contracting out other decorating functions.

The taxpayers drew down on these funds as vendor
invoices were presented.  Upon completion of a customer
order or project, funds remaining from a job were
transferred to another account designated as "the
business account."  As shown from the record, at the
end of 1993, there was only $5,993.68 remaining in the
Trust account pending disbursement (compared to
$8,553.88 at the beginning of the year).  The prior
means that all of the non-disputable $390,804.74 in
deposits were used in payments to vendors and suppliers
with the exception of a mere $69,077 which was
transferred over to the business account.

The Taxpayers followed this procedure with
substantial and reliable consistency, exercising due

---

[2] Petitioners have also urged us to take into account the
settlement figures for the 1992 year in judging the 1993 year.
Because respondent agreed that the 1992 income tax deficiency was
$5,666 and that no sec. 6662(a) penalty is to apply, petitioners
contend that the larger amount and penalty determined by
respondent for 1993 is inherently inconsistent and contrary to
the pattern that petitioners contend exists in their reporting of
income from their business.  Petitioners' contentions are
oblivious to many principles of evidentiary, procedural, and
substantive law.  For example, under the well-established
principles of Commissioner v. Sunnen, 333 U.S. 591 (1948), each
taxable year or period is not a predicate for another period
unless the principles of res judicata or collateral estoppel have
been shown to apply.  Petitioners have not shown that the facts
and circumstances of the 1992 year were decided and are identical
to those of the 1993 tax year.  In addition, the details of the
parties' settlement of the 1992 year, generally, may not be
disclosed to the Court.  See Fed. R. Evid. 408.

care to see that the obligations of a project were <u>fully</u> paid off before the taxpayers could claim and transfer any funds to gross revenue. Predicated on same, this Trust account principle should be respected and, as only an opening premise, the $69,077 should become the <u>opening</u> universe for purposes of gross revenue. * * *

Petitioners, therefore, argue that they used a methodology where customers' advances and/or payments were placed in a trust or customers' bank account and that the amounts transferred from the trust account to another business-denominated account represented the net income or profit from the customer transactions after paying petitioners' suppliers or subcontractors. Petitioners offered a certified public accountant who, after respondent's audit and issuance of the notice of deficiency, observed the records and methodology for 1992 and concluded that it was a workable approach to reporting income. Petitioners' accountant/witness, however, did not audit or verify petitioners' methodology for 1993 or show how petitioners' records would have systemic integrity.

More significantly, the records of petitioners' business were prepared by Mr. Rifkin, who was deceased as of the time of trial, and Mrs. Rifkin was not familiar with the record methodology or the return preparation. She testified that she signed the tax return without reviewing its contents. Accordingly, we are left with petitioners' accountant/witness' conclusion that the system used could work, but no way to

understand if the methodology was properly followed or to specifically verify the amount of income reported by petitioners for 1993. Those inadequacies are attributable to petitioners' lack of adequate records that would permit verification. Mrs. Rifkin testified that customers usually gave a deposit to petitioners of 60 percent of a proposed job, and that amount was deposited into the trust account. She further testified that a customer's deposits were not used for jobs or purposes other than that customer's job. Mrs. Rifkin went on to explain that as items were purchased for a client's job, the amounts were taken from the trust account. She did not explain how the customer's deposits were segregated and/or accounted for.

Finally, after completing a job for a customer, if any amount was left, Mrs. Rifkin testified that the "profit" would be transferred out of the customer's trust account to petitioners' regular business account. The balance of the trust account, which had $390,804.74 of deposits during the year, was about $9,000 at the beginning and $6,000 at the end of 1993. We find it curious that "deposits" in the trust account would shrink to less than $10,000 at the end of each year when annual activity in the account approached $400,000. When respondent's counsel asked Mrs. Rifkin about that apparent incongruity, she did not provide any explanation other than the account tended to fluctuate.

More importantly, respondent has shown that deposits were made to petitioners' accounts, that all transfers between accounts that were located or brought to respondent's attention were subtracted from the total deposits, and that a further and substantial reduction was made for petitioners' cost of goods sold. Petitioners have not shown that any additional transfers between accounts occurred, and/or that respondent's cost of goods sold calculation should be increased. Moreover, petitioners have not shown that any additional deposits, other than the ones identified by respondent, were from nontaxable sources or that the bank deposit analysis should be otherwise adjusted.

Instead, petitioners attempt a collateral attack, arguing that a comparison of their living expenses for 1993 does not comport with the amount of income reconstructed by respondent. The living expense analysis that had been conducted by respondent's agent was a litmus test to determine generally whether petitioners were living within the means reported for the taxable years. Respondent has not vouched for the accuracy or completeness of that approach, and petitioners have not shown how, in this setting, such an analysis would be more reliable than the methodology used and relied upon in respondent's determination. Petitioners have made their collateral claims without offering detailed analysis to show what, if anything, happened to the unexplained deposits. We find that petitioners'

approach falls short of showing that respondent's bank deposit and cost of goods calculations are in error. In addition, petitioners have not shown that their approach would be more reliable than respondent's or that it was, in fact, reliable and/or verifiable.

Respondent also disallowed a total of $5,640 in claimed expenses on petitioners' Schedule C and $20,879.00 of itemized deductions on Schedule A of petitioners' 1993 income tax return. As a result of disallowing the itemized deductions, respondent allowed petitioners a $6,200 standard deduction. Petitioners failed to substantiate the claimed expenses and itemized deductions or to show respondent's determination to be in error regarding these items. Accordingly, respondent's determination is sustained as to the disallowed expenses and deductions.

Finally, respondent determined an accuracy-related negligence penalty under section 6662(a) for petitioners' 1993 taxable year. Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment which is so attributable. Respondent argues that the entire deficiency should be subject to the 20-percent penalty "because there was $324,851.00 of unreported gross receipts, no

substantiation of claimed expenses, untrustworthy books and records, and lack of cooperation."

The term "negligence" has been defined to include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and a lack of due care or failure to do what a reasonable and ordinary person would do under the circumstances. Sec. 6662(c); see Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have the burden of proving that respondent's determination is in error. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972).

Petitioner Pamela T. Rifkin's argument as to why we should not find her liable for the section 6662(a) penalty is twofold: (1) She had nothing to do with the preparation of the 1993 return, and she did not review it prior to signing it; and (2) respondent's settlement of the 1992 taxable year for a "de minimis" amount should have some bearing on the outcome of the 1993 tax year's result.

We have already rejected petitioners' attempt to rely on the 1992 tax year as a basis for resolution of the issues before the Court for the 1993 year. As to Mrs. Rifkin's argument that she had nothing to do with the return preparation and/or that she relied solely on her husband for those matters, this Court has, in similar situations, rejected that argument. See Goldberg v. Commissioner, T.C. Memo. 1997-74, and cases cited therein. In

reaching our conclusion that the penalty should apply to both petitioners, we have considered that Mrs. Rifkin operated the business, dealt with the clients, and likely received and made payments in connection with the business.  Her attempt to attribute the return inadequacies to her now deceased husband must fail.

To reflect the foregoing and to account for concessions of the parties,

<u>Decision will be entered under Rule 155.</u>