T.C. Summary 2003-154

UNITED STATES TAX COURT

WILLIAM M. HAWKINS AND LAURA C. HAWKINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11334-99S.          Filed October 21, 2003.

William M. Hawkins, pro se.

<u>Ronald T. Jordan</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes, additions to tax, and penalties as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalties Sec. 6662 |
|------|-----------|-------------------|-----------|
| 1992 | $25,952 | $5,929 | $5,190 |
| 1993 | 5,914 | 870 | 1,183 |
| 1994 | 12,751 | 2,597 | 2,550 |

The issues for decision for each year in issue are: (1) Whether petitioners underreported income; (2) whether petitioners are entitled to depreciation deductions greater than those respondent allowed; (3) whether petitioners are entitled to a deduction for charitable contributions; (4) whether petitioners had reasonable cause for their failure to file a timely Federal income tax return; and (5) whether the underpayment of tax required to be shown on petitioners' Federal income tax return is due to negligence.

Background

Some of the facts have been stipulated and are so found. Petitioners are husband and wife. They filed an untimely Federal income tax return for each year in issue. At the time the petition was filed, they resided in Indianapolis, Indiana.

William M. Hawkins (petitioner) is an attorney. He has practiced law since 1971 and did so as a sole practitioner during the years in issue. Petitioners' Federal income tax return for each year in issue includes a Schedule C, Profit or Loss From Business, on which income and expenses attributable to

petitioner's law practice are reported.  Petitioner maintained a checking account for his law practice (the business account), kept individual client records, and saved receipts for expenses incurred in his law practice.  Otherwise he kept no formal books of account or other accounting records to track income earned and expenses incurred in his law practice.

Petitioners own numerous residential real estate properties that were held for rent or rented during the years in issue (the rental properties).  Some of the rental properties were rented pursuant to Federal or State rent subsidy programs.  Petitioners' Federal income tax return for each year in issue includes a Schedule E, Supplemental Income and Loss, on which income and expenses attributable to the rental properties are reported. Petitioner used the business account to pay expenses incurred in connection with the rental properties.  He also saved expense receipts.  Other than the business account and the expense receipts, petitioner kept no formal books of account or other accounting records to track income earned and expenses incurred in connection with the rental properties.

Petitioners also maintained a joint checking account during the years in issue (the joint account).  Expenses related to petitioner's law practice and the rental properties were not paid from the joint account.  However, some personal expenses were paid with checks drawn on the business account.

Petitioners' joint 1992 Federal income tax return was filed on April 19, 1995, their 1993 return was filed on April 16, 1996, and their 1994 return was filed on April 16, 1997. Petitioner prepared each of these returns. Items reported on the Schedules C are summarized as follows:

| Year | Gross Income | Total expenses | Profit/(Loss) |
|------|-------------|----------------|---------------|
| 1992 | $28,850 | $46,719 | ($17,869) |
| 1993 | 29,500 | 46,505 | (17,005) |
| 1994 | 24,500 | 45,318 | (20,818) |

Items reported on the Schedules E are summarized as follows:

| Year | Rents received | Total expenses | Income/(Loss) |
|------|----------------|----------------|---------------|
| 1992 | $85,820 | $151,975 | ($66,155) |
| 1993 | 101,968 | 140,733 | (38,765) |
| 1994 | 128,216 | 120,482 | 7,734 |

The examination of petitioners' returns began in March 1996.[1] Petitioner failed to provide the revenue agent with all of the documents that she requested from him. As best can be determined from the record, the revenue agent did not issue any summonses to petitioners or third parties. Business account bank statements and canceled checks were provided to the revenue agent, as was petitioner's check register for the business account. Petitioner also provided a check register for the joint account, but the register included only entries made from April through December 1992. The revenue agent concluded that petitioners' income could not be determined from the books and

---

[1] Sec. 7491 is therefore inapplicable.

records with which she was provided.  She decided to reconstruct petitioners' income using the cash T-account method and computed petitioners' unreported income for each year in issue as follows:

| Year | Income per return | Expenses | Unreported income |
|------|-------------------|----------|-------------------|
| 1992 | $171,718 | $311,882 | $140,164 |
| 1993 | 191,844 | 239,445 | 47,601 |
| 1994 | 180,735 | 215,195 | 34,460 |

Using a ratio derived from the incomes reported on the Schedules C and E, the revenue agent allocated the unreported income between those schedules as follows:

| Year | Schedule C | Schedule E | Total |
|------|------------|------------|-------|
| 1992 | $35,041 | $105,123 | $140,164 |
| 1993 | 10,472 | 37,129 | 47,601 |
| 1994 | 5,514 | 28,946 | 34,460 |

The revenue agent relied on depreciation schedules that were apparently created in connection with an examination of petitioners' returns for years preceding 1992 and brought the schedules forward to the years in issue.  As a result, petitioners' depreciation deductions were adjusted (reduced) as follows:

| Year | Schedule C | Schedule E | Total |
|------|------------|------------|-------|
| 1992 | $11,629 | $13,239 | $24,868 |
| 1993 | 11,916 | 14,105 | 26,021 |
| 1994 | 16,011 | 14,594 | 30,605 |

The revenue agent did not question the charitable contribution deduction claimed for any year in issue.

Respondent issued a notice of deficiency to petitioners on March 19, 1999. For each year in issue, respondent: (1) Increased petitioners' income by the unreported income amount listed above; (2) reduced depreciation deductions claimed on the Schedule C and Schedule E; (3) made statutory adjustments to petitioners' self-employment tax, self-employment tax deduction, and itemized deductions; (4) imposed an addition to tax for petitioners' failure to file a timely return; and (5) imposed an accuracy-related penalty for negligence or disregard of rules or regulations.

## Discussion

Section 6001 requires a taxpayer to maintain sufficient records to allow for the determination of the taxpayer's correct tax liability. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989). If a taxpayer fails to maintain or does not produce adequate books and records, the Commissioner is authorized to reconstruct the taxpayer's income, sec. 446(b); Petzoldt v. Commissioner, supra at 686-687, and it is well settled that indirect methods may be used to do so, Holland v. United States, 348 U.S. 121 (1954). The Commissioner's reconstruction need only be reasonable in light of all the surrounding facts and circumstances. Petzoldt v. Commissioner, supra at 687; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970); Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

In this case, petitioners' unreported income for each year in issue was determined by use of the cash transactions method, commonly referred to as a "cash T analysis", which includes a table with income items (debits) on the left side of the "T" account and expenses (credits) on the right side of the "T" account.  See, e.g., Owens v. Commissioner, T.C. Memo. 2001-143. This method in some ways resembles the source and application of funds method.  Balken v. Commissioner, T.C. Memo. 1994-375, affd. without published opinion 72 F.3d 133 (8th Cir. 1995).  Its purpose is "to measure a taxpayer's reported income against expenditures to determine whether more was spent than was reported."  Rifkin v. Commissioner, T.C. Memo 1998-180, affd. without published opinion 225 F.3d 663 (9th Cir. 2000).  The suggestion is, of course, that the excess of expenditures over reported income represents unreported income.  Id.

According to respondent's long-ago-published training materials, the cash T-account analysis is used as a preliminary to one of the more commonly used and more sophisticated indirect methods of reconstructing a taxpayer's income, such as the net worth method, bank deposits method, source and application of funds method, or specific item method.  See, e.g., Rifkin v. Commissioner, supra; 60 Stand. Fed. Tax Rept. (CCH) (1973).

In this case, petitioners' failure to maintain adequate books and records justified the use of an indirect method to

reconstruct their income. According to petitioner, the excess of expenditures over reported income for each year is accounted for by a cash hoard that he maintained in a safe in his house. The revenue agent rejected petitioner's claim, and we do likewise. See, e.g., Parks v. Commissioner, 94 T.C. 654, 663 (1990). Rejecting petitioner's cash hoard claim, however, does not require us to accept respondent's computation. Although we find that respondent's use of an indirect method is appropriate, the analysis itself is not without problems. For example, the revenue agent acknowledged that her analysis might have overstated petitioners' unreported income for each year insofar as she included in her analysis expenditures that petitioners paid by check, plus all itemized deductions, without adjusting for duplications for those itemized deductions that were paid by check.

Other problems exist with respect to the revenue agent's analysis. For example, her analysis for 1992 includes an expenditure of $26,600 for new roofs for one or more of the rental properties. With respect to this item, the revenue agent relied on handwritten entries on the above-referenced depreciation schedules but could not identify who made the notations or why they were made. Petitioner denied that any amount was expended for new roofs on any of his rental properties during 1992, and we accept his testimony on the point.

We are also troubled by assumptions the revenue agent made on account of a lack of records from the joint account. The check register that the revenue agent used covered only 9 months of 1992. She averaged the monthly expenditures made during those 9 months and applied that amount to the 3 remaining months not covered by the check register. She then applied the average monthly expenditures for 1992 to 1993 and 1994. We consider this inappropriate and unreasonable given that petitioners' joint checking account records could have been obtained from petitioners' bank.

On the other hand, we reject petitioner's implausible claim that the source of many of the expenditures included in the revenue agent's analysis was a cash hoard that he kept in a safe in his residence. See De Venney v. Commissioner, 85 T.C. 927, 933 (1985) ("[T]he existence of a cash hoard is endlessly claimed by taxpayers to explain the existence of otherwise unexplained sources of funds. It is rare indeed that a taxpayer successfully proves this contention."). After careful consideration of the record, we accept respondent's analysis subject to the following adjustments. For 1992, the following expenditures must be eliminated from respondent's cash T-account computation: (1) Itemized deductions; (2) personal expenditures estimated through the use of monthly averages; and (3) the $26,600 expenditure for new roofs. For 1993 and 1994, personal expenditures determined

with reference to checking account information from 1992 must be eliminated from respondent's computation.

## Depreciation Deductions

Petitioners have failed to offer any evidence to contradict respondent's partial disallowance of their depreciation deductions. Petitioner suggested he had depreciation schedules that would support the allowance of those deductions and was given ample time following trial to provide these schedules, but he failed to do so. Respondent is sustained on this issue.

## Charitable Contribution Deductions

Respondent disallowed the charitable contribution deduction petitioners claimed for each year in issue. The revenue agent testified that she did not question those deductions during the examination of petitioners' returns. Furthermore, the deductions were taken into account in respondent's cash T-account analysis. On the basis of petitioner's testimony, we find that petitioners are entitled to the charitable contribution deductions as claimed on their returns.

## Section 6651 Addition to Tax

The failure to file a timely Federal income tax return results in a mandatory addition to tax unless the taxpayer shows that the failure was due to reasonable cause and not due to willful neglect. Sec. 6651(a). The taxpayer bears the heavy burden of proving both of these elements. United States v.

<u>Boyle</u>, 469 U.S. 241, 245 (1985) (defining "willful neglect" as the conscious, intentional failure or reckless indifference on the part of the taxpayer to file a return, and "reasonable cause" as the inability to file a return within the prescribed period of time, despite having exercised ordinary business care and prudence).

Petitioners failed to file a timely Federal income tax return for each year. The record is nearly devoid of evidence pertaining to this issue. When prompted by this Court to explain the untimely filing of their returns, petitioner responded as follows:

> I'll tell you exactly. Your Honor, I found that I was paying more taxes than I was required to pay. And I, negligence on my side, I began to ask for an extension because I felt like this. You don't have to pay penalty, you don't have to pay no late charge, as long as you have money coming back. And you do it within three years.

There is no evidence that petitioners exercised reasonable business care and prudence, and the above quote suggests that the untimely filing of petitioners' returns was due to petitioner's willful neglect. Petitioners have failed to carry their burden of proof and respondent is sustained on this issue.

<u>Section 6662 Penalty</u>

Under section 6662, a penalty is imposed on that portion of an underpayment of the tax required to be shown on a return if the underpayment is due to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined to

include any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code. Sec. 6662(c). It is further defined as the failure to do what a reasonable person with ordinary prudence would do under the same or similar circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Disregard is defined to include any careless, reckless, or intentional disregard. Sec. 6662(c). An accuracy-related penalty will not be imposed with respect to any portion of an underpayment as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). Whether the taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Circumstances that may indicate reasonable cause and good faith include the extent of the taxpayer's effort to properly assess the tax liability and an honest misunderstanding of fact or law that is reasonable in light of the taxpayer's experience, knowledge, and education. Id. The taxpayer bears the burden of proving that he or she did not act negligently or disregard rules or regulations. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioner is not an unsophisticated taxpayer but an experienced attorney, licensed since 1971. He operates his own law practice and owns approximately 18 investment properties. This experience is relevant in deciding whether he acted

negligently with respect to the underpayments of tax required to be shown on petitioners' returns.  See Pelton & Gunther v. Commissioner, T.C. Memo. 1999-339; Estate of Holland v. Commissioner, T.C. Memo. 1997-302 (positions taken on return not reasonable in light of the fact that one of the executors was an experienced attorney).  Furthermore, petitioners failed to maintain adequate books and records from which their Federal income tax liability could be established.  See Sowards v. Commissioner, T.C. Memo. 2003-180; Brodsky v. Commissioner, T.C. Memo. 2001-240; sec. 1.6662-3(b)(1), Income Tax Regs.  After careful consideration of all pertinent facts and circumstances, we find that petitioners did not act with reasonable cause and in good faith and that the underpayments of tax required to be shown on their returns are due to petitioners' negligence.  Respondent is sustained on this issue.

Reviewed and adopted as the report of the Small Tax Division.

To reflect the foregoing,

Decision will be

entered under Rule 155.