T.C. Summary Opinion 2007-15

UNITED STATES TAX COURT

MARIA E. MAGALLON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17263-05S.                    Filed January 29, 2007.

Maria E. Magallon, pro se.

<u>Jonathan A. Neumann</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7463.  Unless otherwise indicated, all
section references are to the Internal Revenue Code in effect for
the year in issue, and all Rule references are to the Tax Court
Rules of Practice and Procedure.  The decision to be entered is
not reviewable by any other court, and this opinion should not be
cited as authority.

Respondent determined for 2002 a deficiency in petitioner's Federal income tax of $5,291 and a section 6662(a) accuracy-related penalty of $922.

Petitioner did not contest in the petition or at trial whether she had unreported taxable interest in 2002. Therefore, petitioner is deemed to have conceded the issue. Rule 34(b)(4); see Funk v. Commissioner, 123 T.C. 213, 215 (2004). The issues for decision are whether petitioner: (1) Had unreported Schedule C gross receipts for 2002, (2) is entitled to Schedule C deductions for taxes and licenses expenses, (3) is entitled to claim a dependency exemption for her daughter, MA,[1] and (4) is liable for a section 6662(a) accuracy-related penalty.

## Background

The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petition in this case was filed, petitioner resided in Stockton, California. Petitioner is a native speaker of Spanish. One of her daughters, Gisell Pompa, acted as her interpreter at trial.

During 2002, petitioner was self-employed, engaging in retail sales in a flea market. Petitioner was also employed by "M&R" in 2002.

In 2002, petitioner made a number of trips to a casino called Jackson Rancheria where she gambled almost exclusively on

---

[1]The Court will refer to the minor child by her initials.

slot machines. Jackson Rancheria issued to petitioner for 2002, eight Forms W-2G, Certain Gambling Winnings, showing that petitioner had total gross winnings of $35,355.

Petitioner filed for 2002 Form 1040, U.S. Individual Income Tax Return, reporting wages of $3,003. Petitioner also reported gambling winnings of $35,355 against which she claimed Schedule A gambling loss deductions of $35,233. On Schedule C, Profit or Loss From Business, petitioner reported income of $6,992 derived from gross receipts of $20,305 from her flea market sales. Petitioner claimed Schedule C deductions of $1,460 for taxes and licenses expenses, a dependency exemption deduction for MA, and a child tax credit of $34.[2]

Petitioner's return was examined by Tax Compliance Officer George Martin (TCO Martin). During the examination, petitioner provided to TCO Martin: (1) A Form 4822, Statement of Annual Estimated Personal and Family Expenses, indicating that her personal expenses totaled $10,826, (2) an annual activity report from Jackson Rancheria substantiating that petitioner had net gambling losses of $28,183.15 in 2002, (3) a calendar showing the daily amount of income from her flea market sales, and (4) other miscellaneous documentation.

_____

[2]The correct computation of the child tax credit will be determined by the Court's resolution of the dependency exemption deduction issue.

TCO Martin determined, based on his review of the documentation presented, that petitioner did not maintain adequate records to account for gross receipts from her flea market sales. TCO Martin therefore used a "cash T analysis", an indirect method to reconstruct income. He compared petitioner's known sources of income to her personal expenditures to determine whether more was spent than was reported. The cash T analysis reflected that petitioner expended $17,871 more than her known sources of income for 2002. TCO Martin concluded that the excess expenditures suggested that petitioner had unreported gross receipts of at least $17,871 from her flea market sales.[3]

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioner did not present evidence or argument that she satisfied the requirements of section 7491(a). Therefore, the burden of proof does not shift to respondent.

---

[3]Because of respondent's mathematical error, the statutory notice of deficiency incorrectly indicated that the adjustment to petitioner's Schedule C gross receipts was $17,368. The correct adjustment would have been $17,871.

I.   Unreported Schedule C Gross Receipts

Section 6001 requires a taxpayer to maintain sufficient records to allow for the determination of the taxpayer's correct tax liability.  Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989).  If a taxpayer fails to maintain or does not produce adequate books and records, the Commissioner is authorized to reconstruct the taxpayer's income.  See sec. 446; Petzoldt v. Commissioner, supra at 686-687.  Indirect methods may be used for this purpose.  Holland v. United States, 348 U.S. 121 (1954). The Commissioner's reconstruction need only be reasonable in light of all the surrounding facts and circumstances.  Petzoldt v. Commissioner, supra at 687; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).

The evidence shows that petitioner failed to provide adequate records to account for the gross receipts from her flea market sales.  Therefore, it was reasonable for TCO Martin to use the cash T analysis, an indirect method, to reconstruct petitioner's income for 2002.

The cash T analysis is performed by setting up a table with income items (debits) on the left side of the "T" account and expenses (credits) on the right side of the "T" account.  See, e.g., Owens v. Commissioner, T.C. Memo. 2001-143.  Its purpose is "to measure a taxpayer's reported income against personal expenditures to determine whether more was spent than was

reported." Rifkin v. Commissioner, T.C. Memo. 1998-180, affd. without published opinion 225 F.3d 663 (9th Cir. 2000). The implication is that the excess of expenditures over reported income represents unreported income. Id.

On the income side of the "T" account, TCO Martin determined that petitioner had total cash sources of $34,473, consisting of: (1) Reported wages of $3,000, (2) reported Schedule C gross receipts of $20,305, (3) gifts from her son of $6,000, and (4) Social Security benefits of $5,168 for MA. On the expenses side of the "T" account, TCO Martin determined that petitioner had total cash expenditures of $52,344, consisting of: (1) State/Federal withholdings of $230, (2) tax payments for prior years of $700, (3) Schedule A expenses of $427, (4) Schedule C expenses of $11,978, (5) personal living expenses of $10,826, and (6) net gambling losses of $28,183 in 2002. Therefore, petitioner's expenditures exceeded her known income by $17,871. Since petitioner failed to show that she had other sources of income, TCO Martin concluded that the excess expenditure of $17,871 represented unreported gross receipts from her flea market sales.

At trial, the focus of the inquiry with regard to the cash T analysis was on petitioner's gambling losses. According to the annual activity report from Jackson Rancheria, which is

reproduced below, petitioner had net gambling losses of $28,183.15 in 2002.

| Gaming Area | Dollars In | Dollars Out | Win/Loss |
|---|---|---|---|
| Pit | $75.00 | -0- | ($75.00) |
| Slot | 686,611.23 | $658,503.08 | (28,108.15) |
| Totals | 686,686.23 | 658,503.08 | (28,183.15) |

Petitioner agrees that the report is accurate to the extent that it shows that she had net gambling losses of $28,183.15 in 2002. Petitioner, however, argues that the report was "definitely incorrect" in showing that she gambled $686,686.23 in 2002. For tax purposes, it is irrelevant whether petitioner actually gambled $686,686.23 or some other amount in 2002 in order to arrive at net gambling losses of $28,183.15.

TCO Martin included petitioner's excess gambling losses on the expenses side of the "T" account because petitioner failed to account for the income source that she used to pay for those losses. Unless petitioner can account for how she had paid for her excess gambling losses in 2002, such losses were properly included in the expenses side of the "T" account.

Petitioner claims that she used her excess winnings from 2001 to pay for her excess gambling losses in 2002. In support, petitioner presented a Form 1040 for 2001 where she reported winnings of $60,546 and claimed a gambling loss deduction of $43,916, resulting in net winnings of $16,530.

TCO Martin testified that he had reviewed bank statements from all of petitioner's known accounts. The statements,

however, did not show that there was a large balance forward from 2001 that could be used to pay for expenses in 2002. Petitioner claims that there was no large balance forward in her bank account because shortly after she deposited the checks from Jackson Rancheria, she withdrew the money. As part of the initial audit questions, TCO Martin had asked whether petitioner had cash on hand outside of her bank accounts. Petitioner's representative at that time gave no indication that petitioner had a "cash hoard".

It is well established that the Court is not required to accept petitioner's self-serving testimony in the absence of corroborating evidence. See Niedringhaus v. Commissioner, 99 T.C. 202, 219 (1992); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Moreover, petitioner has the burden of proof. See Rule 142(a). Petitioner's uncorroborated testimony is insufficient to convince the Court she used her excess 2001 winnings rather than unreported gross receipts from her flea market sales to pay for her gambling losses in 2002.

Petitioner did not raise any issues with respect to the remaining income and expense items that TCO Martin used in his cash T analysis.

Accordingly, the Court accepts respondent's conclusion from his cash T analysis that petitioner had excess expenditures of

$17,871 that represent unreported gross receipts from her flea market sales.

## II.  Taxes and Licenses Expenses Deductions

Tax deductions are a matter of legislative grace with a taxpayer bearing the burden of proving entitlement to the deductions claimed.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Under section 162, a taxpayer may deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business, if the taxpayer maintains sufficient records to substantiate the expenses.  Sec. 162(a); see sec. 6001; Deputy v. du Pont, 308 U.S. 488, 495 (1940). Taxpayers bear the burden of substantiating the amount and purpose of any claimed deduction.  See Hradesky v. Commissioner, 65 T.C. 87 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976).

Petitioner claimed Schedule C deductions of $1,460 for taxes and licenses expenses.  Petitioner failed to provide any documentation to substantiate that she paid $1,460 for taxes and licenses in 2002.  Therefore, respondent's determination disallowing the claimed deductions is sustained.

## III. Dependency Exemption

Petitioner claimed a dependency exemption deduction for her daughter, MA, for 2002.  Section 151(c)(1) allows a taxpayer to claim as a deduction an exemption for each qualifying dependent.

A child of the taxpayer is considered a "dependent" so long as the child has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, and more than half the child's support for the taxable year was received from the taxpayer. Secs. 151(c)(1)(B), 152(a)(1). The age limit is increased to 24 if the child was a student as defined by section 151(c)(4). Sec. 151(c)(1)(B).

In 2002, MA received Social Security benefits of $5,168 for her support. In order for petitioner to meet the support requirement under section 152(a), she must show that she paid more than $5,168 for MA's support in 2002. Petitioner failed to provide any documentation to support her contention that she provided for more than half of MA's support in 2002.

Accordingly, respondent's determination disallowing the exemption deduction is sustained.

IV. Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a). Section 6662(a) imposes a 20-percent penalty on the portion of an understatement attributable to any one of various factors, including negligence or disregard of rules or regulations and a substantial understatement of income tax. See sec. 6662(b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to

comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6662(d); sec. 1.6662-4(b), Income Tax Regs. The Commissioner bears the burden of production. Sec. 7491(c).

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess her proper tax liability for the year. Id.

Petitioner had a substantial understatement of tax for 2002 because the understatement amount exceeded 10 percent of the tax required to be shown on the return. The Court concludes that respondent has produced sufficient evidence to show that the accuracy-related penalty under section 6662 is appropriate. Nothing in the record indicates petitioner acted with reasonable

cause and in good faith.  Respondent's determination of an accuracy-related penalty under section 6662(a) is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>