T.C. Summary Opinion 2008-10

UNITED STATES TAX COURT

TIMOTHY A. RUNELS AND EMMA VALDIVIESO RUNELS, ET AL.,[1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21450-05S, 6848-06S,   Filed January 29, 2008.
9395-06S.

Timothy A. Runels and Emma Valdivieso Runels, pro sese.

Chong S. Hong, for respondent.

DEAN, Special Trial Judge: These consolidated cases were heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petitions were filed. Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be

_____

[1]Cases of the following petitioners are consolidated herewith: Timothy A. Runels and Emma Valdivieso, docket Nos. 6848-06 and 9395-06S.

treated as precedent for any other case.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies of $6,391, $4,838 and $3,479 in petitioners' 2002, 2003, and 2004 Federal income tax, respectively.  Respondent also determined that petitioners are liable for accuracy-related penalties under section 6662(a) of $1,278.20 for 2002, $967.60 for 2003, and $18 for 2004.

Respondent concedes that the adjustment to petitioners' gross receipts for 2002 reported on Schedule C, Profit or Loss From Business, should be $11,169.  Respondent also concedes that for 2003, the Schedule C depreciation adjustment should be $8,504; and for 2004 the Schedule C adjustments should be $5,843 for "other expenses" and $995 for depreciation, the self-employment tax is $303, and the self-employment tax deduction is $152.

Petitioners concede as correct the adjustment for rent/lease of business property for 2002 and the adjustments to Schedule F, Profit or Loss From Farming, for 2002 and 2003.  Petitioners presented no evidence or argument with respect to respondent's adjustments to itemized deductions for 2002, 2003, and 2004.  The Court therefore deems the latter adjustments to have been conceded by petitioners.  See Rule 149(b); Rothstein v.

<u>Commissioner</u>, 90 T.C. 488, 497 (1988); <u>Cerone v. Commissioner</u>, 87 T.C. 1, 2 n.1 (1986).

The issues remaining for decision are whether petitioners: (1) Had unreported income from self-employment in 2002 and 2003;[2] (2) had unreported income from dividends and capital gains in 2004; (3) are entitled to business expense deductions greater than those allowed by respondent for 2002, 2003, and 2004; and (4) are liable for the accuracy-related penalty under section 6662(a) for 2002, 2003, and 2004.

<u>Background</u>

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. At the time the petitions were filed, petitioners resided in Oceano, California.

Timothy Runels (Mr. Runels), during the years at issue, worked 5 days a week for Luker Framing, a subsidiary of J&S Lumber. He was also self-employed in the business of repairing and selling wooden pallets, primarily on Saturdays and Sundays. In addition, Mr. Runels picked up pallets in the mornings and evenings during the week.

Emma Valdivieso Runels (Mrs. Runels) was in the bookkeeping business, working for a certified public accountant (C.P.A.),

---

[2]The resolution of this issue and the business expense issues will also resolve the issue of petitioners' liability for and deductability of self-employment taxes.

preparing accounts payable for Lenders Choice Network.  In 2002, she had 2 or 3 years experience.  Mrs. Runels is aware that businesses and individuals keep books and records and receipts.

Petitioners' Federal income tax returns for 2002, 2003, and 2004 were chosen for examination.  Tax Compliance Officer (TCO) Carolyn Price sent the initial contact letter to petitioners.  The TCO was subsequently contacted by petitioners' return preparer, who held a power of attorney (POA) for 2002.  Eventually, the return preparer attended a meeting with the TCO but provided "a very minimal amount of records."  Ultimately, the TCO obtained most of petitioners' bank statements and prepared a bank deposits analysis to verify petitioners' income.  The results of the bank deposits analysis caused the TCO to make an adjustment to petitioners' gross receipts for 2002.  The TCO had contact only with petitioners' return preparer for 2002, and not with petitioners.

Petitioners failed to respond to requests from the TCO for information for 2003 during the initial examination.  Petitioners' return preparer appeared before the TCO, without a POA, to provide some documentation for 2004.  After the TCO prepared the audit report for 2004, petitioners requested and received audit reconsideration for the year.  Petitioners disagreed with the amounts allowed for depreciation and vehicle expenses.  The TCO prepared a "corrected report", lowering the

adjustments for Schedule C "Other Expenses", Schedule C depreciation and section 179 expenses, and self-employment tax.

Although no dividends or capital gains or losses were reported on petitioners' joint return for 2004, the American Funds of the Investment Company of America reported in a statement issued to petitioners a capital gain of $246.67 and total dividends of $358.90 for 2004.

## Discussion

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer has the burden of proving that those determinations are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the Commissioner under section 7491(a). Petitioners did not present evidence or argument that they satisfied the requirements of section 7491(a). Therefore, the burden of proof does not shift to respondent.

Unreported Schedule C Gross Receipts

Section 6001 requires a taxpayer to maintain sufficient records to allow for the determination of the taxpayer's correct tax liability. Petzoldt v. Commissioner, 92 T.C. 661, 686 (1989). If a taxpayer fails to maintain or does not produce adequate books and records, the Commissioner is authorized to reconstruct the taxpayer's income. See sec. 446; Petzoldt v.

Commissioner, supra at 686-687. Indirect methods may be used for this purpose. Holland v. United States, 348 U.S. 121 (1954). The Commissioner's reconstruction need only be reasonable in light of all the surrounding facts and circumstances. Petzoldt v. Commissioner, supra at 687; Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).

The evidence shows that petitioners failed to provide adequate records to account for the gross receipts from their pallet sales. Therefore, it was reasonable for the TCO to use indirect methods, i.e., the bank deposits method for 2002 and a "cash T" analysis for 2003, to reconstruct petitioners' gross receipts.

2002

Bank deposits constitute prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). The bank deposits method of determining income assumes that all the money deposited into a taxpayer's bank accounts during a specific period constitutes income taxable to the taxpayer. Price v. United States, 335 F.2d 671, 677 (5th Cir. 1964). The Commissioner, however, must take into account any nontaxable source or deductible expense of which he has knowledge. Id. The method employed is not invalidated even if the calculations of the Commissioner are not completely correct. DiLeo v.

Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992).

Petitioners kept no books of account for their Schedule C pallet business. Records for the pallet business consisted of petitioners' checkbook, invoices for sales of pallets dated for the months of April through November 2002, and purchase orders for pallets dated for the months of February, March, May, July, and October through December of 2002. Petitioners reported gross receipts of $3,638 on Schedule C. Petitioners' invoices for sales of pallets for 2002 total $3,400. Respondent was unable to determine from petitioners' records whether they deposited their gross receipts into their bank accounts. He therefore treated the amounts shown on the invoices for sales of pallets as cash that was not deposited to their bank accounts. Mrs. Runels testified, however, that she commingled payments from the pallet business with their personal funds. But when Mrs. Runels was asked at trial to identify in her bank records for 2002 deposits of any of the amounts shown on the invoices for sales of pallets, she was unable to do so.

Petitioners argue that respondent's bank deposits analysis was incorrect because it double counted bank deposits by including bank transfers. Mrs. Runels, however, testified that she conferred with the TCO and with counsel for respondent to demonstrate which items were transfers. Respondent took into

consideration the transfers pointed out by petitioners and reduced the adjustment for gross receipts.

Petitioners argue that the gross receipts adjustment for 2002, even as adjusted for transfers, is incorrect because it does not take into consideration deposits of loan repayments from Mrs. Runels's friend, Leta Edar (Ms. Edar), and gifts from her father, Juan L. Valdivieso. Mrs. Runels testified that she also deposited into the bank accounts expense reimbursements from her job of amounts she expended at Costco. She provided no evidence, however, other than her own vague testimony, that reimbursements by her employer may have been deposited.

Petitioners offered a typewritten statement dated September 1, 2005, from Mrs. Runels's father[3] to the effect that he had given petitioners "several thousands of dollars in monetary gifts in the year 2002." Petitioners offered no details as to either the amounts or timing of the alleged gifts or when they were deposited, if at all.

According to Mrs. Runels's testimony, she lent Ms. Edar $6,000 for which she received no promissory note, maintained no written record of repayment, and received repayments only in cash for which she never provided a receipt. She testified that Ms. Edar "still owes me $400"; she added that "This is just a friend helping a friend."

---

[3]Juan Luis Valdivieso passed away on December 5, 2006.

As evidence of the repayments and deposits in 2002, petitioners provided copies of 10 ATM receipts of deposit dated from December 28, 2001,[4] through December 27, 2002, totaling $3,189.69. With the exception of the deposit in 2001, and one deposit for $500 in March of 2002, the ATM receipts for deposit were for less than $500. Only part of the amount of each deposit represents repayment of the loan, Mrs. Runels testified. But she also testified that she did not keep a record of transactions showing either the dates and amounts of repayments or a current balance. When asked how she could use the deposit slips to determine Ms. Edar's repayments Mrs. Runels replied: "We've just every time she paid me money I just subtracted, okay, this is how much you owe me from here on out.".

Mrs. Runels's friend, Ms. Edar, appeared as a witness and testified regarding the alleged loan, but her testimony was not consistent with that of Mrs. Runels. Ms. Edar testified that the loan was not made in a lump sum but was in "small amounts", maybe $2,000 each time, when she needed a truck payment or a rent payment. She testified that she made repayments of "500 there, 1,000 here, 1,800." Ms. Edar gave confused testimony about what the outstanding balance of her loan was during the years at issue. She first testified that at the end of 2003 she still

---

[4]Because this $900 deposit was in the previous year it would not affect the bank deposits analysis for 2002.

owed $4,000 or $5,000. She then testified that she owed $400 at the end of 2003, changed that to testify that she currently owes $400, and then claimed that she paid back $4,000 in 2003 and owed $2,000 at the end of 2003.

Even if the Court were to accept at face value the testimony of Mrs. Runels and Ms. Edar about the existence of the loan, the record provides no basis on which to attribute any particular amount to 2002 or 2003 as having been repaid or deposited into petitioners' accounts. Respondent's determination of unreported gross receipts for 2002, as revised, is sustained.

2003

The cash T analysis is performed by setting up a table with income items (debits) on the left side of the "T" account and expenses (credits) on the right side of the "T" account. See, e.g., Owens v. Commissioner, T.C. Memo. 2001-143. Its purpose is "to measure a taxpayer's reported income against personal expenditures to determine whether more was spent than was reported." Rifkin v. Commissioner, T.C. Memo. 1998-180, affd. without published opinion 225 F.3d 663 (9th Cir. 2000). The implication is that the excess of expenditures over reported income represents unreported income. Id.

Petitioners failed to respond to requests from the TCO for information for 2003 during the examination, and respondent, using the cash T analysis, determined that petitioners had

unreported gross receipts of $6,670. At trial, petitioners argued that the analysis was faulty because it failed to take into account an insurance settlement of $6,635.90 received in 2003. During her testimony, Mrs. Runels introduced into evidence a document from Interinsurance Exchange of the Automobile Club referencing a February 2, 2003, payment to petitioners of $6,635.90 for a claim for damage to their dwelling. Mrs. Runels explained that the payment was for a claim for "our dog flooding our house." Petitioners argue that the check "pretty much covers that extra $7,000 they say I made." Petitioners are correct; the insurance payment was not included on the "income" side of respondent's cash T analysis because they did not inform the TCO about the transaction during the examination.

The Court infers, without evidence to the contrary, that petitioners expended in 2003 the insurance settlement of $6,635.90 to repair the flood damage to their home. Since the expenditures for the flood damage repairs were not included on the expense side of the analysis, the exclusion of the insurance settlement payment from the "income" side of the item failed to affect the analysis because it would be balanced by the additional expenses for repairs.

Petitioners also argued that they had a $38,000 line of credit available as well as $5,000 in a savings account as of January 2003. But petitioners offered no evidence during the

examination or at trial to show whether the $5,000 was expended during the year for expenses already taken into consideration or how the $38,000 line of credit was used.

Respondent's determination of unreported gross receipts for 2003 is sustained.

## Dividends and Capital Gains in 2004

Petitioners dispute the dividends and capital gains determined for 2004.  The only evidence presented on the issue, however, was the American Funds of the Investment Company of America statement to them reporting a capital gain of $246.67 and total dividends of $358.90 for 2004.  Respondent's determinations on these issues are sustained.

## Schedule C Expenses

Section 162 generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business.  Generally, no deduction is allowed for personal, living, or family expenses.  See sec. 262. The taxpayer must show that any claimed business expenses were incurred primarily for business rather than social reasons.  See Rule 142(a); Walliser v. Commissioner, 72 T.C. 433, 437 (1979). To show that the expense was not personal, the taxpayer must show that the expense was incurred primarily to benefit his business, and there must be a proximate relationship between the claimed expense and the business.  See Walliser v. Commissioner, supra.

Where a taxpayer has established that he has incurred a trade or business expense, failure to prove the exact amount of the otherwise deductible item may not be fatal. Generally, unless prevented by section 274, the Court may estimate the amount of an expense and allow the deduction to that extent. See Finley v. Commissioner, 255 F.2d 128, 133 (10th Cir. 1958), affg. 27 T.C. 413 (1956); Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In order for the Court to estimate the amount of an expense, however, the Court must have some basis upon which an estimate may be made. See Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Without such a basis, an allowance would amount to unguided largesse. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).

Certain business deductions described in section 274 are subject to strict rules of substantiation that supersede the doctrine in Cohan v. Commissioner, supra. See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). Section 274(d) provides that no deduction shall be allowed with respect to: (a) Any traveling expense, including meals and lodging away from home; (b) any item related to an activity of a type considered to be entertainment, amusement, or recreation; or (c) the use of any "listed property", as defined in section 280F(d)(4), unless the taxpayer substantiates certain elements.

"Listed property" includes any passenger automobile,[5] sec. 280F(d)(4)(A)(i), and any cellular telephone, sec. 280F(d)(4)(A)(v).

To meet the requirements of section 274(d), the taxpayer must present adequate records or sufficient evidence to corroborate his own testimony to establish:  (1) The amount, based on the appropriate measure, of the expenditure or use (mileage may be used in the case of automobiles); (2) the time and place of the expenditure or use; (3) the business purpose of the expenditure or use; and (4) the business relationship to the taxpayer of each expenditure or use, in the case of an entertainment or gift expense.

To meet the adequate records requirements of section 274, a taxpayer must maintain some form of records and documentary evidence that in combination are sufficient to establish each element of an expenditure or use.  See sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  A contemporaneous log is not required, but corroborative evidence to support a taxpayer's reconstruction of the elements of expenditure or use must have "a high degree of probative value to elevate such statement" to the level of credibility of a

---

[5]With exceptions not pertinent here, a passenger automobile includes a truck rated at 6,000 pounds gross vehicle weight or less.  Sec. 280F(d)(5)(A).

contemporaneous record.  Sec. 1.274-5T(c)(1), Temporary Income
Tax Regs., supra.

Automobile Expenses

Petitioners failed to provide any records relating to their
automobile expenses for the pallet business either during the
examination or during the reconsideration of the original
examination for 2004.  The TCO testified that during the
reconsideration of the original examination, Mr. Runels advised
her that he did not have a vehicle log.  He was asked to provide
something that would show odometer readings for the years under
consideration.  Petitioners provided no additional documentation
to substantiate business mileage.  The TCO testified that "we
retraced what he was doing" and she allowed an amount that she
estimated was the appropriate business use.  The TCO testified
that she took the mileage that Mr. Runels traveled for his job,
adjusted for nondeductible commuting mileage, and added an amount
for pickup and dropoff of his pallets.  The TCO estimated his
business mileage and based depreciation on her estimate of
business use.

In the "Corrected Report", issued as a result of the
reconsideration of petitioners' 2004 return, the TCO determined
the business use of petitioners' truck to be 29 percent.  She
reduced the original adjustment to reflect that use.  Petitioners
acquired the truck in July of 2003, when the truck was placed in

service.  As part of the reconsideration of 2004, the TCO computed an "allowable amount" for 2003 but made no change to the original adjustment to the 2003 return denying any depreciation deduction.  Respondent has conceded that petitioners are entitled to a depreciation deduction of $2,835 for 2003.

Two months before trial, Mrs. Runels sent to respondent's counsel electronic facsimiles of documents represented to be worksheets recording where Mr. Runels had to be for his job and the pallets he picked up and "mileage books we have been keeping since 2005."  The documentation was ostensibly for November and December of 2003, for January of 2004, and for 2007.  About a month before trial, petitioners sent to respondent's counsel copies of work logs for 2003 and 2004.  At trial, Mr. Runels testified that the belatedly submitted records of business mileage were reconstructions rather than contemporaneous records. He described them as "rough estimates of what we did."

The Court finds that petitioners failed to provide corroborative evidence to support their reconstruction of the elements of use.  See sec. 1.274-5T(c)(1), Temporary Income Tax Regs., supra.  Petitioners are entitled to deduct depreciation for 2003, as conceded by respondent, but have otherwise failed to show that they are entitled to deduct automobile expenses greater than those allowed by respondent.

Other Expenses

The only other Schedule C expenses for which petitioners offered evidence were statements billing for Internet service from March 4, 2002, through January 3, 2003, and cellular telephone service for March through December of 2002. Petitioners, however, offered no evidence to show that the expenses were not personal, that they were incurred primarily to benefit their business, and that there was a proximate relationship between each claimed expense and the business. See sec. 262; Walliser v. Commissioner, supra.

Accuracy-Related Penalty

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, affd. 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, supra.

Respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a). Section 6662(a) imposes a 20-percent penalty on the portion of an underpayment attributable to any one of various factors,

including negligence or disregard of rules or regulations and a substantial understatement of income tax. See sec. 6662(b)(1) and (2). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, including any failure to keep adequate books and records or to substantiate items properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. A "substantial understatement" includes an understatement of tax that exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. See sec. 6662(d)(1)(A); sec. 1.6662-4(b), Income Tax Regs.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his proper tax liability for the year. Id.

Petitioners had a substantial understatement of tax for 2002 since the understatement amount exceeded the greater of 10 percent of the tax required to be shown on the return or $5,000. Petitioners claimed deductions for 2003 farm expenses to which

they were not entitled and had underreported gross receipts from their pallet business.  For 2004, petitioners failed to report capital gains and dividends, the only adjustments to which the penalty was applied.  The Court concludes that respondent has produced sufficient evidence to show that the accuracy-related penalties under section 6662 are appropriate.

Petitioners have not shown that their underreporting of income and overreporting of deductions were actions taken with reasonable cause and in good faith.  Respondent's determinations of accuracy-related penalties under section 6662(a) for 2002, 2003, and 2004 are sustained.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.